UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

In Re:

    ROBERT ZELAZOWSKI,                      Chapter 13
                                                      Case No.: 11-61141

                                  *Debtor*.
_____

APPEARANCES:

DAVID J. GRUENEWALD
*Attorney for Debtor*
P.O. Box 69
Manlius, New York 13104

GETNICK LIVINGSTON ATKINSON & PRIORE, LLP   DAVID A. EGHIGIAN, ESQ.
*Of Counsel to Weltman Weinberg & Reis Co., LPA*
*Attorneys for Wells Fargo Dealer Services, Inc.*
258 Genesee Street, Suite 401
Utica, New York 13502

Honorable Diane Davis, United States Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

      This matter comes before the Court on the Objection of Creditor, Wells Fargo Dealer Services, Inc. ("Wells Fargo") to Debtor's Chapter 13 Confirmation (the "Objection to Confirmation," ECF No. 13), wherein Wells Fargo asserts that confirmation of the proposed Chapter 13 Plan (the "Plan," ECF No. 2) filed by Robert Zelazowski ("Debtor") should be denied pursuant to 11 U.S.C. § 1325(a)(5)(B)(ii) because the Plan proposes to pay Wells Fargo less than the amount of its allowed secured claim.[1]  At issue is the valuation of Wells Fargo's collateral, a 2006 Chevrolet Silverado K1500 LT (the "Silverado"), which Debtor seeks to value

---

[1] Unless otherwise indicated, all further section references herein relate to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532 (2010).

at $5,100.00 for purposes of the § 1325(a)(5)(B)(ii) cramdown provision.[2]  Through its Objection to Confirmation, Wells Fargo seeks to have the Silverado valued at $12,642.75, which is less than its claim in the amount of $19,803.74.  The Court conducted a valuation hearing on February 9, 2012, after which the parties submitted a Joint Stipulation of Facts (the "Stipulation," ECF No. 29) and competing post-hearing submissions (ECF Nos. 33 & 34).  For all the reasons set forth below, the Court sustains Wells Fargo's Objection to Confirmation and fixes the replacement value of the Silverado at $10,642.75.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b).  This is a core proceeding which the Court may hear and determine pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (L).  Pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1.  On August 14, 2007, Debtor executed a Retail Installment Contract (the "Contract"), wherein he acknowledged an indebtedness to Wells Fargo in the principal amount of $34,017.05, which amount he agreed to repay with interest in accordance with the terms of the Contract.  (Stip. ¶ 1.)

2.  On May 24, 2011, Debtor filed a petition seeking relief under Chapter 13, together with the Plan.

3.  As of the date of Debtor's bankruptcy filing, the indebtedness to Wells Fargo under the Contract consisted of the outstanding balance in the amount of $19,803.74, plus

---

[2] The term "cramdown" is used to describe the ability of a debtor to reduce an undersecured creditor's claim to the value of its collateral.  *In re Gonch*, 435 B.R. 857, 858 n.1 (Bankr. N.D.N.Y. 2010).

interest from that date, late charges, attorneys' fees, and costs. (Stip. ¶ 2.) On or about June 7, 2011, Wells Fargo filed a Proof of Claim asserting a purchase money security interest in the Silverado with a balance due in this amount.

4. The indebtedness evidenced by the Contract is secured by the Silverado bearing VIN# 1GCEK19V96Z289579. (Stip. ¶ 3.)

5. Based on the evidence adduced at the evidentiary hearing, Debtor seeks to have the Silverado valued at $5,100.00 for purposes of cramdown. (Stip. ¶ 5.)

6. On the other hand, Wells Fargo seeks to have the Silverado valued at $12,642.75. (Stip. ¶ 4.)

7. Debtor testified that he uses the Silverado for personal use to travel to and from work, which is approximately seventy-four miles round trip, five days a week. He also testified that the Silverado's transmission slips, the tires need replacing, the back doors of the cab do not work, and the ABS indicator light is on.

8. In support of his proposed valuation, Debtor called as an expert witness Jeffrey Garska ("Garska"), the owner of Northeast Motors in Marcy, New York. Garska testified that he has owned Northeast Motors since February 2001, and that the business operates primarily as a used car dealership. He personally inspects and appraises every vehicle purchased, beginning with a base value determined by consulting the NADA, Kelley Blue Book, and Manheim Retail Market Report figures to arrive at a set figure, which is then reduced for body damage and mechanical problems.

9. Garska inspected and appraised the vehicle on October 25, 2011. He completed a Used Car Retail Appraisal (the "Garska Appraisal"), which was admitted into evidence as Debtor's Exhibit B, wherein he summarized his findings as follows: "$5,100 appraisal value

based on averages from NADA, Kelley Blue Book, and Manheim Retail Market Report, minus adjustments. Appraisal value reflects adjustments for paint and mechanical repairs plus repair costs." Garska listed both the exterior and interior condition of the Silverado as "average to poor," and the mechanical condition as "average" based on a road test that he personally conducted. Using a starting market value of $5,825.00, Garska testified that he made a downward adjustment in value of $400.00 for sheet metal and paint condition, although he confirmed that the actual cost would need to be determined through an estimate.

10. Garska testified that, in his opinion, the maximum resale value that he could obtain if he were to sell the Silverado on his lot would be $6,000.00.

11. Wells Fargo called as an expert witness Frank Meola ("Meola"), owner of Advanced Auto Appraisers in Utica, New York.

12. Meola testified that he conducted an appraisal of the Silverado on August 4, 2011, as evidenced by his Valuation Report, which was admitted into evidence as Wells Fargo's Exhibit 1. Meola testified that he took the following steps to arrive at a fair market value of $12,642.75 for the Silverado: (1) he began by averaging the NADA and the Automobile Red Book values, both of which were included in his Valuation Report; and (2) he then made adjustments to the average retail value using a standard computer software program that allowed him to input specific damage or vehicle amenities and he itemized those adjustments in his Valuation Report.

13. Meola clarified on cross-examination that his appraisal was based on insurance industry standards and, thus, his valuation represented the totaled vehicle value for the Silverado. He continued to state, however, that the insurance company is required to pay the insured the actual cash value, or fair market value of the vehicle.

## ARGUMENTS

Preliminarily, Wells Fargo contends that the appropriate date for purposes of cramdown valuation is the date of filing, which Debtor did not address. Even assuming that the appropriate date for valuation may be post-petition, Wells Fargo argues that Debtor has nonetheless failed to meet his burden of proving the cramdown value of the Silverado because the Garska Appraisal is unreliable in part for the reason that Garska did not include or verify the base values from which he derived the starting retail value of $5,825.00. Further, Wells Fargo contends that Debtor did not introduce any competent evidence as to how Garska determined the value of the adjustments made to reduce the retail value by $725.00. In contrast, Wells Fargo submits that Meola properly averaged the base values listed in industry standard reference guides, he made appropriate adjustments using industry standard software, and he accounted for all damage to the Silverado.

Debtor acknowledges that the replacement value is the correct standard under §§ 1325(a)(5)(B)(ii) and 506(a)(2) to establish the cramdown value of a vehicle, but he argues that there is no statutory mandate that a book value be used as a baseline for determining the actual retail value. Rather, citing the language of 11 U.S.C. § 506(a)(2), Debtor contends that the value Garska as a "retail merchant" and used car dealer would charge for the Silverado, taking into account the "age and condition of the property at the time value is determined," is the correct figure. Moreover, Debtor takes issue with Meola's valuation because it was based on what an insurance company would pay out if the Silverado had been totaled rather than what the open market would bear upon resale. Debtor further fault's Meola's valuation because Meola did not test drive the Silverado. Finally, Debtor submits that common sense "dictates that a vehicle with

a bad transmission, a great deal of wear and tear, and 165,000 miles is not worth . . . $12,000.00 in the Utica, [New York] market." (Debtor's Mar. 9, 2012 Letter Submission, ECF No. 34.)

## DISCUSSION

Wells Fargo does not dispute that Debtor may bifurcate and cramdown its secured claim. By choosing to retain the Silverado, Debtor must prove that the amount Wells Fargo will receive, as of the effective date of the Plan, is not less than the allowed amount of its secured claim. 11 U.S.C. § 1325(a)(5)(B)(ii). Section 506(a)(2), which governs valuation of personal property for individual chapter 7 and 13 cases, requires that the value of property acquired for personal, family, or household purposes be determined by its "replacement value . . . as of the date of filing of the petition without deduction for costs of sale or marketing." 11 U.S.C. § 506(a)(2). Pursuant to § 506(a)(2), the "replacement value" of such collateral is "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." *Id.* As the proponent of the Plan, the burden is on Debtor to prove that the Plan properly treats Wells Fargo's secured claim by paying the replacement value of the Silverado. *See, e.g., In re St. Vincent*, 2012 Bankr. LEXIS 1412, *4 (Bankr. W.D. Mich. Mar. 12, 2012) (citing *In re Caldwell*, 895 F.2d 1123, 1126 (6th Cir. 1990)); *In re Davis*, 392 B.R. 132, 134 (Bankr. E.D. Pa. 2008) (citing *In re Hill*, 268 B.R. 548, 552 (B.A.P. 9th Cir. 2001)).

Although Debtor did not address the temporal issue raised by Wells Fargo, the Court must do so as its first order of business. The leading bankruptcy treatise is instructive in this regard, stating:

> In general, collateral is to be valued as of the effective date of the debtor's plan. If the collateral is personal property in an individual case under chapter 13, section 506(a)(2), added in 2005, directs that the property is to be valued 'as of the date of the filing of the petition.' This point in time, of course, will be different from the date of the confirmation of the debtor's chapter 13 plan. But the second sentence of section 506(a)(2) goes on to provide that with respect to

>property acquired for personal, family or household purposes, replacement value means the price a retail merchant would charge for property of that kind considering the age and condition of the property *at the time when value is determined*. That time will often be the date of confirmation.

4-506 Collier on Bankruptcy ¶ 506.03[7][c][i] (MB 2012) (emphasis in original). Following suit with several other courts, and as is consistent with the current local practice, this Court rejects an approach that would rigidly fix valuation to the to the petition date and instead will continue to employ a more flexible, context-specific approach. *See, e.g., In re Landry*, 462 B.R. 317 (Bankr. D. Mass. 2011) (analyzing conflicting case law and adopting the position that collateral should be valued, for cramdown purposes, as of the effective date of the chapter 13 plan); *In re Nice*, 355 B.R. 554 (Bankr. N.D.W.Va. 2006) (same).

Having determined that the Garska Appraisal was appropriately timed,[3] the Court now turns its attention to the question of the replacement value for the Silverado. While certain courts have concluded that the process for valuing a vehicle under § 506(a)(2) is to designate a particular book value as a starting point based on the "age and condition" of the vehicle, *In re Berry*, 2008 Bankr. LEXIS 1539, *11 (Bankr. D. Vt. May 13, 2009) (collecting and analyzing post-BAPCPA Circuit court case law), others have determined that "[t]he valuation of assets is not an exact science, and [must be] done on a case-by-case basis," *Gonch*, 435 B.R. at 864. This Court agrees with the latter approach whereby the book values may be offered and considered as one indicia of value but do not in and of themselves control.

Debtor did not offer into evidence either through the Garska Appraisal or credible testimony the three numbers Garska used in his formulaic approach to arrive at an average

---

[3] The Court notes also that the Garska Appraisal post-dated Debtor's bankruptcy filing by approximately five months, and that such delay, even if improper, would have a de minimis effect upon the valuation of the Silverado because the only alteration to the Silverado during that time period was to its mileage. Further, both experts had an opportunity to inspect and appraise the Silverado in its current condition within relatively close proximity to one another and both experts were able to adjust for the mileage as needed.

starting value of $5,825.00. As such, the evidentiary value of Debtor's offer of proof turns entirely on the credibility of Garska and the weight the Court affords his expert opinion. The Court must, however, balance his testimony and the Garksa Appraisal against that of Meola and his Valuation Report.

Wells Fargo offered both credible testimony and a viable starting point for valuation. While Garska listed the Silverado in average to poor condition, Meola listed the Silverado in good condition. Using that benchmark, Meola started with the NADA and Red Book retail values of $17,625.00 and $16,000.00, respectively, and, after making various upward and downward adjustments for mileage and other key features of this particular Silverado, arrived at base NADA and Red Book retail values of $13,675.00 and $17,350.00, respectively. Working from an average base retail value of $15,512.00, Meola deducted $2,519.75 for prior damage to the Silverado and $350.00 for necessary reconditioning, to arrive at his final replacement value of $12,642.75. Taking into account the fact that Meola utilized industry software to arrive at and substantiate his adjustments, which software is used to calculate the retail value, the Court agrees with Meola's approach thus far. Meola's valuation, however, fails to address the transmission problem, which Meola estimated would cost approximately $1,500.00 to $2,000.00 to replace, and it fails to address the need for replacement tires. Based upon Meola's testimony and his familiarity with necessary auto repairs given his wealth of experience, the record supports a downward adjustment of $2,000.00 for the transmission. The record does not, however, support a downward adjustment for replacement tires because no evidence exists to quantify the same. Therefore, the Court finds that the replacement value of the Silverado is $10,642.75.

**CONCLUSION**

Based upon the foregoing, it is hereby

ORDERED, that Wells Fargo's Objection to Confirmation is sustained; and it is further

ORDERED, that the replacement value of the Silverado is hereby fixed at $10,642.75; and it is further

ORDERED, that Debtor shall file and serve an Amended Chapter 13 plan in accordance with this Memorandum-Decision and Order within fourteen days of its issuance.

Dated at Utica, New York
This 17th day of April 2012

                                                                  /s/ Diane Davis_____
                                                                  DIANE DAVIS
                                                                  United States Bankruptcy Judge